UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**19 CR 232**

United States Courts
Southern District of Texas
F I L E D

APR 02 2019

David J. Bradley, Clerk of Court

| UNITED STATES OF AMERICA | § |
| --- | --- |
|  | § |
| v. | § |
|  | § |
| **RICHARD GARZA** | § |
| **AHMAD BOKAIYAN** | § |

### INDICTMENT

**THE GRAND JURY CHARGES:**

**A.   Introduction**

**AT ALL TIMES MATERIAL HEREIN:**

### DEFENDANTS

1.  **Richard Garza** ("**Garza**"), was a resident of Houston, TX and he was the Superintendent of **Houston Gateway Academy** ("**HGA**"), a public Charter School incorporated by the State of Texas. HGA has two campuses, educating low income students for pre-kindergarten to the eighth (8) grade. The school receives millions of dollars annually in Federal Department of Education and other Federal funds as well as State funds administered by the Texas Education Agency. **Garza** has been school Superintendent at HGA since 2011.

2.  **Ahmad Bokaiyan** ("**Bokaiyan**"), was the Information Technology ("IT") contractor and then full time employee of HGA, beginning in 2007.

1

3. **Hot Rod Systems**, was a sole proprietorship business owned and operated by **Bokaiyan**.

### Federal and State Agencies

4. **United States Department of Education,** is a department of the United States government. Its primary functions of the Department of Education are to establish policies, administer and coordinate most federal financial assistance to Schools throughout the United States, to collect educational related data on U.S. schools, and to enforce federal educational laws regarding privacy and civil rights. The Department of Education does not establish schools or colleges. The Department of Education-Office of Inspector General (DOED-OIG) conducts audits and investigations in connection to the Department's financial program funding and other educational programs.

5. **Texas Education Agency ("TEA")**, is an agency of the State of Texas. Under the leadership of the commissioner of education, TEA carries out the following functions:
    - Administers the distribution of state and federal funding to public schools;
    - Administers the statewide assessment program and accountability system;
    - Provides support to the State Board of Education (SBOE) in the development of the statewide curriculum;
    - Assists the SBOE in the instructional materials adoption process and managing the instructional materials distribution process;
    - Administers a data collection system on public school information;
    - Performs the administrative functions and services of the State Board for Educator Certification;
    - Supports agency operations, including carrying out duties related to the Permanent School Fund; and
    - Monitors for compliance with certain federal and state guidelines.

    TEA's operational costs are supported by both state and federal funds.

## COUNT ONE
### (Conspiracy, 18 U.S.C. § 371)

6. The Grand Jury realleges and incorporates by reference herein, as if fully set forth below, paragraphs one through five of the Introduction to the Indictment.

7. Beginning on or about January 1, 2014 and continuing until December 31, 2014, in the Houston Division of the Southern District of Texas and elsewhere,

**Richard Garza**
**and**
**Ahmad Bokaiyan**

defendants herein, did knowingly combine, conspire, confederate and agree with each other and others known and unknown to the Grand Jury to commit the following offenses against the United States:

>  (a) to knowingly embezzle, steal, obtain by fraud and otherwise without authority to convert to the use of any person other than the rightful owner, property valued at $5,000 or more and owned by, or under the care, custody, and control of an organization, government, and agency which received in any one year period Federal assistance in excess of $10,000, in violation of 18 U.S.C. § 666(a)(1)(A);

>  (b) to knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, representations, and promises, and knowingly to transmit and cause to be transmitted by means of wire, radio, or television communication, and writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or

artifice, in violation of Title 18 United States Code, §1343;

(c) to knowingly engage in and attempt to engage in monetary transactions within the United States in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, §1957.

## Manner and Means of the Conspiracy

The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

8. It was part of the conspiracy that the defendants would and did create a scheme by which **Garza**, Superintendent of HGA, improperly awarded a contract to Hot Rod Systems and paid for the installation and configuration of IT Network equipment on a new HGA Campus that had not been constructed. In turn, **Bokaiyan**, owner of Hot Rod Systems wired money back to **Garza's** personal bank account that he used for his personal benefit.

9. It was further part of the conspiracy that defendant **Garza** would and did violate the Texas Education Code and HGA Financial Policy by awarding a "no-bid" contract to Hot Rod System in the amount of $280,841.85 to purchase, configure and install IT Computer Network Equipment at a new HGA Campus, when the defendants well knew that construction on the new campus had not even begun.

10. It was further part of the conspiracy that defendant **Garza** would and did cause three (3) checks totaling approximately $252,757.67 to be disbursed from the HGA's operating account at IBC Bank in Houston, TX to defendant **Bokaiyan's** company Hot Rod Systems.

11. It was further part of the conspiracy that defendant **Bokaiyan**, within days of receiving checks from defendant **Garza** would and did cause wire transfers of approximately $164,381.00, from his account at IBC Bank to defendant **Garza's** personal business account at Wells Fargo Bank.

12. It was further part of the conspiracy that defendant **Garza** would and did transfer approximately $131,917.00 to another personal account at Wells Fargo Bank wherein he purchased a Condominium in the approximate amount of $86,514.38, and a Nissan Armada SUV in the approximate amount of $50,318.00.

13. It was further part of the conspiracy that defendant **Garza** would and did cause twenty three (23) checks to be paid to Bank of America with HGA funds totaling approximately $25,927.00 on a loan for a house in Cypress, TX.

### Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Houston Division of the Southern District of Texas and elsewhere:

(1). On or about March 27, 2014, defendant **Garza** caused a check to be issued from HGA funds to Hot Rod Systems, owned by defendant **Bokaiyan**, in the approximate amount of $87,477.70.

(2). On or about April 2, 2014, defendant **Garza** caused a check to be issued from HGA funds to Hot Rod Systems, owned by defendant **Bokaiyan**, in the approximate amount of $98,829.90.

(3). On or about April 22, 2014, defendant **Garza** caused a check to be issued from HGA funds to Hot Rod Systems, owned by defendant **Bokaiyan**, in the approximate amount of $66,450.07.

(4). On or about April 3, 2014, defendant **Bokaiyan** caused a wire transfer from his account at IBC Bank to an account of defendant **Garza** at Wells Fargo Bank in the approximate amount of $87,477.70.

(5). On or about April 8, 2014, defendant **Bokaiyan** caused a wire transfer from his account at IBC Bank to an account of defendant **Garza** at Wells Fargo Bank in the approximate amount of $54,985.99.

(6). On or about May 15, 2014, defendant **Bokaiyan** caused a wire transfer from his account at IBC Bank to an account of defendant **Garza** at Wells Fargo Bank in the approximate amount of $21,917.49.

(7). On or about April 14, 2014, defendant **Garza** paid approximately $50,318.70, from HGA money he received from defendant **Bokaiyan**, to Central Houston Nissan to purchase a Nissan Armada SUV.

(8). On or about April 17, 2014, defendant **Garza** paid approximately $86,514.38, from HGA money he received from defendant **Bokaiyan**, to Stewart Title Co. to purchase a condominium located in Houston, TX.

(9). On or about April 7, 2014, defendant **Garza** paid approximately $1,292.73 from HGA funds to Bank of America for a house in Cypress, TX.

In violation of Title 18, United States Code, Section 371 and 2.

## COUNT TWO
**(Theft Concerning Programs Receiving Federal Funds, 18 U.S.C. § 666 (a)(1)(A))**

On or about January 1, 2014 and continuing through on or about December 31, 2014, in the Houston Division of the Southern District of Texas, and elsewhere,

**Richard Garza**

defendant herein, being an agent of Houston Gateway Academy, an agency that received benefits during calendar year 2014 in excess of $10,000.00 under a federal program involving a grant and other forms of federal assistance, did embezzle, steal, and obtain by fraud, something of value of $5,000.00 or more, that is approximately $25,927.00, that was under the care, custody and control of Houston Gateway Academy.

In violation of 18 U.S.C. § 666(a)(1)(A).

## COUNT THREE
**(Theft Concerning Programs Receiving Federal Funds, 18 U.S.C. § 666 (a)(1)(A))**

On or about March 31, 2014 and continuing to May 15, 2014, in the Houston Division of the Southern District of Texas, and elsewhere,

**Richard Garza**

defendant herein, being an agent of Houston Gateway Academy, an agency that received benefits during calendar year 2014 in excess of $10,000.00 under a federal program involving a grant and other forms of federal assistance, did embezzle, steal, and obtain by fraud, something of value of $5,000.00 or more, that, is approximately $252,757.67, that was under the care, custody and control of Houston Gateway Academy.

In violation of 18 U.S.C. § 666(a)(1)(A).

7

## COUNTS FOUR through SIX
## (Wire Fraud, 18 U.S.C. § 1343)

1. The Grand Jury realleges and incorporates by reference, as though set forth in full herein, paragraphs one through five of the Indictment, and paragraphs six through thirteen of Count One of this Indictment.

2. Beginning on or about January 1, 2014, and continuing until January 31, 2014, in the Houston Division of the Southern District of Texas and elsewhere,

**Richard Garza**
**and**
**Ahmad Bokaiyan**

defendants herein, did knowingly execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, including concealment of material facts.

### The Method and Means of the Scheme and Artifice to Defraud

3. The scheme and artifice to defraud consisted essentially of the defendants embezzling and stealing approximately $252,757.67 of funds belonging to Houston Gateway Academy (HGA), a charter school located in Houston, TX, for their personal use and benefit.

4. It was part of the scheme and artifice to defraud that the defendant **Garza** would and did cause three (3) checks totaling approximately $252,757.67 of

funds from HGA that included federal Department of Education funds to Hot Rod Systems a contracting company owned by defendant **Bokaiyan** to purchase IT computer network equipment for a new HGA campus, when the defendants well knew that construction on the new campus had not even begun.

5. It was part of the scheme and artifice to defraud that the defendant **Bokaiyan**, within days of receiving checks from defendant **Garza** would and did cause wire transfers of approximately $164,381.00, from his account at IBC Bank to defendant **Garza's** personal business account at Wells Fargo Bank.

6. It was part of the scheme and artifice to defraud that defendant **Garza** would and did transfer approximately $131,917.00 to another personal account at Wells Fargo Bank wherein he purchased a Condominium in the approximate amount of $86,514.38, and a Nissan Armada SUV in the approximate amount of $50,318.00.

### Execution of the Scheme and Artifice to Defraud

On or about the dates set out in the counts below for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud, in the Southern District of Texas and elsewhere,

**Richard Garza
and
Ahmad Bokaiyan**

defendants herein, did knowingly transmit and caused to be transmitted by means of wire, radio, and television communication, and writings, signs, signals, pictures, and sounds, approximately $164,381.00, transferred by wire from Defendant Bokaiyan's IBC Bank account, to Defendant Garza's business account at Wells Fargo Bank in Houston, TX for Defendant Garza's personal benefit as more fully set forth below.

| Count | Date | Wire Transfer |
|---|---|---|
| 4 | 4/03/14 | #00420-$87,477.70 |
| 5 | 4/08/14 | #00340-$54,985.99 |
| 6 | 5/15/14 | #00284-$21,917.49 |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SEVEN
### (Engaging in Monetary Transactions, 18 U.S.C. § 1957)

On or about April 14, 2014, in the Houston Division of the Southern District of Texas and elsewhere,

**Richard Garza**

defendant herein, did knowingly engage in or caused to be engaged in a monetary transaction by and through a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is transfer of a

monetary instrument, to wit: personal check, dated April 17, 2014, drawn on a Wells Fargo Bank account Number 6247115113, and made payable to Central Houston Nissan in the amount of $50,318.70, such property having been derived from specified unlawful activity, namely Wire Fraud, 18 U.S.C. § 1343.

In violation of 18 Title 18, United States Code, Section 1957.

## COUNT EIGHT
**(Engaging in Monetary Transactions, 18 U.S.C. § 1957)**

On or about April 17, 2014, in the Houston Division of the Southern District of Texas and elsewhere,

**Richard Garza**

defendant herein, did knowingly engage in or caused to be engaged in a monetary transaction by and through a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is transfer of a monetary instrument, to wit: a wire transfer, dated April 17, 2014, drawn on a Wells Fargo Bank account Number 6247115113, and made payable to Stewart Title Company in the amount of $81,514.38, such property having been derived from specified unlawful activity, namely Wire Fraud, 18 U.S.C. § 1343.

In violation of 18 Title 18, United States Code, Section 1957.

## NOTICE OF CRIMINAL FORFEITURE
## (18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))

Pursuant to Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to

**Richard Garza
and
Ahmad Bokaiyan**

defendants herein, that in the event of conviction of any of Counts 1 through 6, all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses is subject to forfeiture.

## NOTICE OF CRIMINAL FORFEITURE
## (18 U.S.C. § 982(a)(1))

Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to

**Richard Garza**

defendant herein, that in the event of conviction of either of Counts 7 through 8, all property, real or personal, involved in a money laundering offense, or traceable to such property, is subject to forfeiture.

### Property Subject to Forfeiture

The property subject to forfeiture includes, but is not limited to, the following:

1. 2014 Nissan Armada SUV with VIN No. 5N1BA0ND7EN602286.

2. Real property in Houston, Texas, together with all improvements, buildings, structures and appurtenances, which is legally described as follows: UNIT 113 BLDG 3, .04716 INT COMMON LAND & ELE, REFLECTIONS ON GENTRYSIDE COND.

3. Real property in Cypress, Texas, together with all improvements, buildings, structures and appurtenances, which is legally described as follows: LT 96, BLK 1, VILLAGES OF CYPRESS LAKES SEC 6.

## Money Judgment and Substitute Assets

The United States will seek the imposition of a money judgment against each defendant. In the event that a condition listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of each defendant in substitution up to the total value of the property subject to forfeiture.

A TRUE BILL:

ORIGINAL SIGNATURE ON FILE
FOREPERSON OF THE GRAND JURY

RYAN K. PATRICK
UNITED STATES ATTORNEY
By:

Quincy L. Ollison
Assistant United States Attorney