United States District Court
Southern District of Texas
**ENTERED**
June 17, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States of America,

§
§
§
§

*Respondent,*

§
§

Crim. No. 4:19-cr-00232-1
Civ. No. 4:23-cv-03380

v.

§
§

Richard Garza,

§
§
§

*Defendant-Movant.*

§
§

## MEMORANDUM AND RECOMMENDATION AND ORDER ON PROCEDURAL ISSUES

Three motions are pending. Defendant-Movant Richard Garza filed a motion asserting a single ground for vacating, correcting, or modifying his sentence under 28 U.S.C. § 2255, Civ. Dkt. 1; Crim. Dkt. 178, but later amended that motion to add three more claims, *see* Civ. Dkt. 12; Crim Dkt. 191. Plaintiff-Respondent the United States of America (the "Government") filed an opposition to Garza's request for relief under Section 2255, Civ. Dkt. 14; Crim. Dkt. 192, and Garza replied, Crim. Dkt. 198.

Before submitting his amended § 2255 motion, Garza filed a motion to unseal documents, *see* Crim. Dkt. 186, to which the Government responded, *see* Civ. Dkt. 18; Crim. Dkt. 203, and Garza replied, Crim. Dkt. 206. Garza also moved to strike the Government's over-length response to his § 2255

motion.  *See* Crim. Dkt. 197.  The Government responded to Garza's motion to strike.  Civ. Dkt. 16; Crim. Dkt. 200.

After carefully reviewing the parties' briefs, the record, and the applicable law, it is recommended that Garza's motion for relief under Section 2255 (Civ. Dkt. 12; Crim. Dkt. 191) be denied.  The Court should decline to hold an evidentiary hearing and deny a certificate of appealability.  It is further ordered that Garza's motion to strike the Government's over-length response brief (Crim. Dkt. 197) is denied, and his motion to unseal documents (Crim. Dkt. 186) is granted in part and denied in part.

## Background

Garza was the Superintendent of Houston Gateway Academy ("HGA"), a public charter school in Houston, Texas.  *See* Crim. Dkt. 40 at 6.  HGA receives part of its annual funding from the federal government.  Crim. Dkt. 158 at 24.  As superintendent, Garza contracted with HotRod Systems ("HotRod"), owned by Ahmad Bokaiyan, to purchase computer equipment for HGA's new school campus, Riverstone.  Crim. Dkt. 40 at 6-8.  Between March and April 2014, Garza wrote three checks on HGA's account, ostensibly to pay for the equipment.  *See id.* at 7.  But Garza directed Bokaiyan to wire money back to him, which Garza used to purchase a new car and a condominium.  *Id.* at 6-8.

A grand jury indicted Garza and Bokaiyan on multiple counts.  *See* Crim.
Dkt. 1.  Both defendants were charged with conspiracy, 18 U.S.C. § 371 (Count
1), and wire fraud, 18 U.S.C. § 1343 (Counts 4-6*). Id.* at 3-6, 8-10.  Garza was
also charged with theft concerning programs receiving federal funds, 18 U.S.C.
§ 666(a)(1)(A) (Counts 2-3) and engaging in monetary transactions in
criminally derived property, 18 U.S.C. § 1957 (Counts 7-8).  *Id.* at 6-7, 10-11.

Pursuant to a plea agreement, Garza later agreed to plead guilty to
Count 3, one of the two theft charges.  Crim. Dkt. 40 at 1, 4 (plea agreement).
Count 3 alleged that Garza, "being an agent of Houston Gateway Academy, an
agency that received benefits during calendar year 2014 in excess of $10,000.00
under a federal program involving a grant and other forms of federal
assistance, did embezzle, steal, and obtain by fraud, something of value of
$5,000.00 or more, that is, approximately $252,757.67, that was under the
care, custody, and control of Houston Gateway Academy."  Crim. Dkt. 1 at 7.
In exchange for Garza's guilty plea, the Government agreed to dismiss all
remaining charges against him.  Crim. Dkt. 40 at 4.  The plea agreement
included a standard appellate and collateral review waiver.  *Id.* at 2-3.

At Garza's rearraignment, the Court conducted an extended colloquy.
After the Court explained the elements of the charged offense, Garza stated
under oath that he understood them.  Crim. Dkt. 158 at 18.  The Court
cautioned Garza that the plea agreement's appellate and collateral review

waiver would bar Garza from appealing any "mistake in the sentencing ...." *Id.* at 9-10.  Garza attested that he understood this.  *Id.*  Garza also listened to and explicitly agreed with the prosecutor's factual basis for the plea.  *Id.* at 22. Based on these and other representations, the Court accepted Garza's guilty plea.  *Id.* at 26.

### A.     The PSIR, obstruction of justice, and restitution

For the sentencing hearing, the probation office prepared the Presentence Investigation Report ("PSIR").  The PSIR assessed Garza's Guidelines range as 51 to 63 months, based on a total offense level of 24 and a criminal history category of I.  Crim. Dkt. 79 ¶ 78.  The offense level included enhancements based on the amount of loss, Garza's use of sophisticated means, and his abuse of a position of trust.  *Id.* ¶¶ 29-32.

Of relevance here, the PSIR proposed a two-level upward adjustment for obstruction of justice because Garza had instructed Bokaiyan to tell both an investigating agent in October 2018 and the grand jury in February 2019 that the funds Bokaiyan had transferred to Garza were for a loan.  *Id.* ¶¶ 21, 33; *see* U.S.S.G. § 3C1.1.  Because of that adjustment, the PSIR indicated that Garza was not eligible for an acceptance-of-responsibility reduction.  *Id.* ¶ 36 (citing U.S.S.G. § 3E1.1, cmt. n.4).

The PSIR noted the unusual fact that an HGA official had written a letter to the Court disclaiming entitlement to restitution.  *Id.* ¶ 91.  The letter

4

maintained that HGA had received all the equipment and services for which it had contracted. *Id.*; *see* Crim. Dkt. 54-1 at 35 (Feb. 20, 2020 letter). According to the PSIR, this did not override Garza's misappropriation of federal funds designated for HGA. *See* Crim. Dkt. 79 ¶ 91. And if HGA suffered no harm, the PSIR maintained that the proper victim would be the U.S. Department of Education. *Id.*

The probation office issued an Addendum to the PSIR. *See* Crim. Dkt. 61. Among other things, the Addendum explained why Garza was not entitled to a reduction for acceptance of responsibility. *See id.* at 4. As explained therein, an obstruction of justice enhancement disqualifies a defendant from receiving an acceptance of responsibility credit "except in extraordinary cases." *Id.* But the Addendum observed that "[t]here appears to be nothing extraordinary in this case." *Id.*

Meanwhile, the Court sentenced co-defendant Bokaiyan, who pleaded guilty to the conspiracy charge in Count 1. Crim. Dkt. 88 at 3-4. At that time, it remained unclear to whom the restitution should be paid. *Id.* at 26; Crim. Dkt. 54-1 at 35. During the hearing, the Court noted the "very peculiar situation" where the victim of theft, HGA, had denied being victimized. Crim. Dkt. 88 at 25-27. The Court asked the Government and the probation office to investigate the issue. *Id.* at 26-27. Subsequently, HGA again disavowed

entitlement to restitution.  *See* Crim. Dkt. 95-3 at 1-2 (HGA counsel's Oct. 27, 2020 letter).

## B.    Garza's motion to withdraw his guilty plea

On November 12, 2020, Garza filed a motion to withdraw his guilty plea. Crim. Dkt. 96.  The motion argued that Garza was "not guilty of the offense for which he pled."  *Id.* at 2.  It also claimed that Garza's plea "could not have been done knowingly" because the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that HGA was not the complaining witness in this case.  *See id.* at 1.  The Government responded by moving for an evidentiary hearing.  Crim. Dkt. 98.

At an ensuing conference, the Court noted the questions surrounding HGA's victim status.  *See* Crim. Dkt. 167 at 3-4.  In lieu of an evidentiary hearing, the Court suggested, and the parties agreed, that a forensic audit of HGA's records would be helpful.  *Id.* at 8-11.  The Court authorized the Government to employ a forensic accountant to conduct the audit.  *See* Crim. Dkt. 103.  Both Garza's sentencing and his motion to withdraw his plea were continued pending the audit.  *See* Crim. Dkt. 167 at 16.

The accounting firm of Weaver and Tidwell, L.L.P. analyzed the school's records and issued a voluminous report ("the Weaver Report") on March 9, 2021, and a supplemental report on March 16, 2021.  Crim. Dkt. 109-1, 110-1. According to the Weaver Reports, HGA had originally coded the funds paid to

6

HotRod as federal special revenue funds, but that amount was later reclassified as expenditures related to state funds. *See* Crim. Dkt. 110-1 at 2-3 (clarifying source of the funds based on later-acquired information). The report also noted that HGA's inventory report—referenced in HGA's letters to the Court, *see* Crim. Dkt. 95-1 at 1; Crim. Dkt. 95-3 at 1-2—failed to analyze whether HotRod or some other company had provided the equipment for the Riverstone project. Crim. Dkt. 109-1 at 13. After accounting for the money that Bokaiyan refunded to HGA and the cost of the computer equipment he provided to the school, the Weaver Report concluded that HGA had, directly or indirectly, paid $191,292.30 for which it received no services, all of which consisted of state funds. *Id.* at 14 (total included $156,921.80 that HGA paid directly to HotRod, and $34,370.55 that HGA paid indirectly to HotRod through another company, Genesis).

## C.   The denial of Garza's motion to withdraw his plea

In the interim, Garza filed a supplemental memorandum in support of his motion to withdraw the plea. Crim. Dkt. 115. In particular, Garza argued that Count 3 had incorrectly listed HGA as the complaining witness. *Id.* at 3. Because HGA denied being the complainant, Garza reasoned that he was not guilty of the charge to which he pleaded guilty. *Id.* at 5.

At a hearing in March 2021, the Court denied Garza's motion to withdraw his plea. Crim. Dkt. 155. While explaining its reasons, the Court

7

cited and quoted Garza's statements at the rearraignment, wherein Garza admitted to taking "advantage" of HGA's lack of a general contractor at that time, using that opportunity to "do[ ] a contract beforehand so I can receive those funds," knowingly channeling HGA's funds into his personal account while acting as HGA's agent, and using those funds to purchase a car and a condominium. *See id.* at 22-23. Garza further admitted that HGA had received over a million in federal funds each year. *See id.* at 24. The Court thus rejected contentions of Garza's counsel that HGA's disclaimer of victim status rendered Garza not guilty of theft under Section 666(a)(1)(A).

### D.    The sentencing hearing

At sentencing, the Court overruled Garza's objections that would have affected the Guidelines range. *See generally* Crim. Dkt. 159. The Court adopted the PSIR and its recommended range of 51-63 months' imprisonment. *Id.* at 31.

Notably, the Court found that the obstruction of justice enhancement under U.S.S.G. § 3C1.1 applied because Garza had suborned or attempted to suborn perjury before the grand jury by telling Bokaiyan to testify falsely that the money Bokaiyan had wired to Garza was a loan. *Id.* at 23-27. The Court also found no extraordinary circumstances warranting an acceptance-of-responsibility adjustment. *See id.* at 13, 27-29.

Concerning restitution, the Court rejected HGA's claim that it had been made whole, citing the Weaver Report's conclusion that HGA had only performed a physical inventory of the equipment, and not a forensic accounting. *Id.* at 12. Based on the Weaver Report, the Court ordered $191,292.35 in restitution to be paid to the Texas Education Agency. *Id.* at 12-13, 16. The Court imposed a sentence of 60 months' imprisonment plus three years of supervised release. *Id.* at 47-49.

### E.    Garza's direct appeal

On direct appeal, Garza argued that (1) his trial counsel rendered ineffective assistance by filing a frivolous motion to withdraw his guilty plea, and (2) the district court erred by denying a reduction for acceptance of responsibility. *United States v. Garza*, 2022 WL 2115999, at *1 (5th Cir. June 13, 2022) (per curiam). The Fifth Circuit declined to consider the ineffective assistance claim but affirmed this Court's denial of acceptance-of-responsibility credit. *See id.*

### F.    Section 2255 motions

Garza filed a § 2255 motion through retained postconviction counsel, Josh Schaffer, asserting a single claim that his trial attorneys, E. Matthew Leeper, Jr. and Emmett Matthew Leeper, III, were ineffective. Civ. Dkt. 4; Crim. Dkt. 178. After that motion was docketed, Garza filed a pro se § 2255 motion raising three more claims, which was docketed under Civil Cause No.

4:23-cv-03540. *See* Crim. Dkt. 183. This Court ordered Garza and his counsel to determine which of the two motions Garza wished to pursue. Civ. Dkt. 7; Crim. Dkt. 185. Because Garza chose to represent himself, Crim. Dkt. 187. at 2, attorney Schaffer withdrew, Civ. Dkt. 8, 10; Crim. Dkt. 188, 189.

The Court then consolidated the cases and ordered Garza to file a single amended motion under 28 U.S.C. § 2255. Civ. Dkt. 11; Crim. Dkt. 190. Garza did so. Civ. Dkt. 12; Crim. Dkt. 191. The Government responded, Civ. Dkt. 14; Crim. Dkt. 192, and the Court accepted Garza's late filed reply *nunc pro tunc*, *see* Crim. Dkt. 198, 201; Civ. Dkt. 17. The motion is ripe for resolution.

## Legal standard

Section 2255 sharply curtails the district court's authority to vacate, modify, or correct a sentence. To obtain relief, a movant must show that (1) the sentence violates the U.S. Constitution or other federal law; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the statutory maximum; or (4) the sentence "is otherwise subject to collateral attack …." 28 U.S.C. § 2255. "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). "Other types of error may not be raised under section 2255 unless the defendant demonstrates that the error could not have

been raised on direct appeal *and*, if condoned, would result in a complete miscarriage of justice." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).

Ultimately, the movant bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). *Pro se* filings are "entitled to the benefit of liberal construction." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011). Absent "independent indicia" that the movant's claims likely have merit, an evidentiary hearing is not required. *See United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).

## Analysis

Garza's live, amended Section 2255 motion raises multiple ineffective assistance of counsel claims that attack the basis for his guilty plea and sentence for theft under 18 U.S.C. § 666(a)(1). He also objects to the Government's filing of an overlength response brief without obtaining leave of court. Separately, Garza requests that numerous sealed or otherwise restricted items on the docket of his criminal case be unsealed, which the Government largely opposes. Because that procedural issue is untethered to Garza's asserted grounds for vacating his sentence, the Court addresses his § 2255 motion first.

## I.    Garza's motion for relief under Section 2255.

### A.    Garza's motion to strike is denied.

Garza moved to strike 33 pages of the Government's 60-page response brief for exceeding the Court's page limits. *See* Crim. Dkt. 197. The Government responded by asking the Court to accept its response in full. *See* Crim. Dkt. 200 at 1, 4.

The Court requires leave for any brief or memorandum over 25 pages. *See* Judge Ewing Werlein, Jr., Court Procedures § 6(A). As Garza notes, the Government did not request leave before filing its overlength brief. *See* Crim. Dkt. 197 at 1. Nonetheless, the Court is persuaded that the Government should be granted leave *nunc pro tunc*. *See* Crim. Dkt. 200 at 4.

As the Government notes, nearly half of its response addresses the lengthy and complicated procedural history of this case. *See* Crim. Dkt. 200 at 2-3. That discussion is both necessary and helpful to resolve the issues. The remainder of the Government's brief thoroughly analyzes each of Garza's claims. *See id.* at 3-4. Moreover, the Government utilized larger font for readability. And permitting the brief would not prejudice Garza, who has already filed a reply. The Court therefore denies Garza's motion to strike and grants the Government leave to submit its overlength response *nunc pro tunc*.

**B.** **Garza has not shown entitlement to § 2255 relief.**

Garza's claims target various aspects of his trial attorneys' representation. Many of the theories overlap, asserting that counsel failed to properly investigate and apprise Garza of facts that purportedly render him not guilty of the offense to which he pleaded guilty. Another claim maintains that Garza's trial counsel should have challenged a constructive amendment to the indictment that violated the Fifth Amendment, when the victim's identity changed from HGA to the Texas Education Agency. In the alternative, Garza blames his trial counsel for filing a "frivolous" motion to withdraw the guilty plea that supposedly prompted the Court to impose a longer sentence.

As detailed below, Garza's theories misconstrue the statute underlying his conviction and contravene the record in this case. This Court should deny Garza's requested relief.

**C.** **Legal framework for ineffective assistance of counsel claims**

For ineffective assistance of counsel claims, a defendant first must show that his attorney's representation was deficient. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable

professional judgments support the limitations on investigation." *Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (quotation omitted).

Under the first prong of *Strickland*'s test, counsel's performance must be compared to "an objective standard of reasonableness, mindful of the strong presumption of adequacy." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire [process] with obvious unfairness." *Id.* (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).

The second prong of *Strickland* requires a showing that the attorney's "deficient performance prejudiced the defense." 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial ...." *Id.* Unless both deficiency and prejudice are shown, "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

### D.    Garza has not shown that his trial counsel was deficient during plea negotiations.

Garza argues that his counsel failed to investigate the charges adequately and to properly advise him of relevant facts before he pleaded guilty. *See* Civ. Dkt. 12 at 1-3; Crim. Dkt. 191 at 1-3. According to Garza, counsel wrongly failed to tell him that (1) his actions did not meet the elements

of an offense under 18 U.S.C. § 666(a)(1)(A), and (2) the state-origin of the funds he was charged with stealing divested this Court of jurisdiction.  *See id.* at 2-3.  In response, the Government contends that Garza fails to demonstrate that his counsel was deficient or that any such deficiency was prejudicial.  *See* Civ. Dkt. 14 at 47-51; Crim. Dkt. 192 at 47-51.  The Government is correct.

First, Garza mistakenly believes that he cannot be criminally liable for violating Section 666(a)(1)(A) if only HGA's board of directors could authorize HGA's contract with HotRod.  *See* Civ. Dkt. 12 at 1-2; Crim. Dkt. 191 at 1-2. That is not what the statute says.  Section 666(a)(1)(A) states, in key part, that it is a crime for an "agent" of an "organization" to embezzle, steal, obtain by fraud, or otherwise without authority knowingly convert or intentionally misapply "property that is valued at $5,000 or more" and "is owned by, or is under the care, custody, or control of such organization ...."  18 U.S.C. § 666(a)(1)(A).  Garza admitted all the facts underlying those elements.

At his rearraignment, Garza admitted, under oath, that it was he who caused HGA to issue three checks (totaling $252,757.67) to HotRod and then directed Bokaiyan to transfer a total of $164,381.00 in funds from those checks to Garza's personal bank account.  *See* Crim. Dkt. 40 at 7 (plea agreement); Crim. Dkt. 158 at 19-20 (Government's proffer); *id.* at 22 (Garza admitting that those facts are true).  In Garza's own words, "I took advantage of doing a contract [with HotRod] beforehand, so I can receive those funds."  Crim. Dkt.

158 at 22-23.  When pressed, Garza admitted that he moved the funds into his personal account for his own use, despite knowing that the funds belonged to HGA, for which Garza served as agent.  *See id.* at 23-24; *see also* Crim. Dkt. 40 at 8 (Garza admitting that he used those funds to purchase a Nissan Armada SUV (for $50,318.70) and a condominium (for $81,514.38)).

Thus, Garza admitted being HGA's agent when knowingly and intentionally converting more than $5,000 in funds belonging to HGA or in HGA's custody.  Garza's "[s]olemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  And Garza offers nothing that undermines his prior sworn testimony.  *See, e.g.*, *United States v. McClinton*, 782 F. App'x 312, 315 (5th Cir 2019) (rejecting assertions that contradicted defendant's sworn statements at plea hearing).  Garza's prior admissions confirmed his liability under Section 666(a)(1)(A).

Second, Garza incorrectly assumes that this Court lacked subject-matter jurisdiction if the stolen funds originated from the State of Texas.  *See* Civ. Dkt. 12 at 2; Crim. Dkt. 191 at 2.  To invoke federal jurisdiction, "an indictment need only charge a defendant with an offense against the United States in language similar to that used by the relevant statute."  *United States v. Isgar*, 739 F.3d 829, 838 (5th Cir. 2014) (quotation and citation omitted); *see also* 18 U.S.C. § 3231 (granting federal courts jurisdiction over "offenses against the laws of the United States").  The indictment did just that, by tracking the

16

language of 18 U.S.C. § 666.  *See* Crim. Dkt. 1, § 7.  This alone conferred jurisdiction over the charged offense.  Garza's complaint about the source of the stolen funds has no bearing on jurisdiction.  *See Isgar*, 739 F.3d at 838.

Moreover, the charged offense does not require proof that the funds misappropriated by Garza were federal funds.  What matters is "the nexus between the criminal activity and the *government entity [or organization] receiving the federal funds*, not the nexus between the criminal activity and *any particular federal funds*."  *United States v. Thomas*, 847 F.3d 193, 198 (5th Cir. 2017) (citing *Sabri v. United States*, 541 U.S. 600, 604-05 (2004)).  For the requisite nexus, Section 666(b) specifies that "the organization, government, or agency" must receive from the federal government "benefits in excess of $10,000" in any single year.  18 U.S.C. § 666(b).  Thus, "the elements of § 666 do not require the government to prove that the conduct is traceable to federal funds."  *United States v. Jordan*, 2023 WL 6878907, at *11 (5th Cir. Oct. 18, 2023) (per curiam).

Because Garza's assumptions about the scope of Section 666(a)(1)(A) and the limits to Court's jurisdiction are incorrect, his counsel could not have been deficient in failing to investigate or raise those assertions during plea negotiations.  Nor could those positions, if raised, have changed the result.  Garza's *Strickland* theories concerning his plea negotiations are barred.

### E.    Garza's plea was knowing and voluntary.

Garza's challenges to the knowing and voluntary nature of his plea reprise many of the same misconceptions detailed above.  As already concluded, neither school-board approval of HGA's contract with HotRod, nor the original source of the funds provided to HGA, affects Garza's conviction for violating Section 666(a)(1)(A).

Equally incorrect is Garza's contention that Section 666(a)(1)(A) is limited to agents of government agencies.  *See* Civ. Dkt. 12 at 5; Crim. Dkt. 191 at 5.  "Under the plain text of the statute, to be held criminally liable under 18 U.S.C. § 666(a)(1)(A), the defendant generally must be an 'agent of an organization, *or* of a State, local, or Indian tribal government, *or* any agency thereof.'"  *United States v. Madrid*, 610 F. App'x 359, 377 (5th Cir. 2015) (emphasis added) (quoting § 666(a)(1)).  Those categories are disjunctive.  Garza need only be an "agent" of an "organization" that received more than $10,000 in federal funds during a one-year period.  *See id.*  (citing 18 U.S.C. § 666(a)(1), (b), and rejecting claim that defendant "must have 'government agent status'" (emphasis removed)).

Section 666 defines the term "agent" broadly to include an organization's "servant or employee, and a partner, director, officer, manager, and representative."  *United States v. Shoemaker*, 746 F.3d 614, 620 (5th Cir. 2014) (quoting § 666(d)(1)); *Thomas*, 847 F.3d at 198.  To qualify as an agent, the

defendant also "must be 'authorized to act on behalf of [the organization] with respect to its funds.'" *Madrid*, 610 F. App'x at 377 (quoting *United States v. Whitfield*, 590 F.3d 325, 344 (5th Cir. 2009)); *see also Thomas*, 847 F.3d at 198.

Garza's role easily met that standard. While serving as HGA's superintendent, Garza entered into the contract with HotRod. *See* Crim. Dkt. 158 at 19-20, 22-24. Garza signed checks from HGA's operating account to pay HotRod, ostensibly for equipment for the school's Riverstone campus. Crim. Dkt. 40 at 7; Crim. Dkt. 158 at 22-23 (Garza's explanation). Garza's status with HGA and his direct involvement in contracting with and paying HotRod for school equipment confirm that he was HGA's agent authorized to act on HGA's behalf regarding its funds. In addition, Garza acknowledged that HGA received about "a million and a half in federal funds" every year. *See* Crim. Dkt. 158 at 24. These facts foreclose Garza's assertion that his conduct fails to constitute an offense under Section 666(a)(1)(A).

Garza insinuates that he pleaded guilty only "because his attorneys told him too" [sic] and not because "he was actually guilty of anything." *See* Civ. Dkt. 12 at 5; Crim. Dkt. 191 at 5. But as detailed above, Garza said the opposite, under oath, when admitting that the Government's factual proffer was true and explaining how he committed all elements of the offense. *See* Crim. Dkt. 158 at 19-24. Garza has not overcome the presumption that his

19

prior admissions were true. *See Blackledge*, 431 U.S. at 73-74. This Court should reject Garza's collateral attack on his guilty plea.

### F.   The indictment was not constructively amended.

As a post-plea contention, Garza argues that his indictment was constructively amended. *See* Civ. Dkt. 6-9; Crim. Dkt. 191 at 6-9. Whereas the indictment alleged that he had stolen money from HGA, Garza argues the post-plea findings revealed that HGA had incurred no losses. *See id.* at 6. According to Garza, the PSIR changed the victim's identity to the Texas Education Agency, thereby violating his Fifth Amendment right to indictment by grand jury. *See id.* at 8. Garza frames this issue as a *Strickland* claim, reasoning that trial counsel should have flagged and raised it. *See id.* at 9.

The Government responds that Garza's contention is procedurally defaulted, barred by the plea agreement's collateral review waiver, and substantively meritless. *See* Civ. Dkt. 14 at 55; Crim. Dkt. 192 at 55. Because the undersigned agrees that Garza's claim is flawed in substance, there is no need to address the Government's procedural contentions.

The Due Process Clause prevents indictments from being "broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 216 (1960). A constructive amendment occurs "when the government is allowed to prove an essential element of the crime on an alternative basis permitted by the statute but not charged in the indictment."

*United States v. Quintanilla*, 114 F.4th 453, 466 (5th Cir. 2024) (quoting *United States v. Robles-Vertiz*, 155 F.3d 725, 728 (5th Cir. 1998)).

But not all factual variations constitute a constructive amendment. *United States v. Hanson*, 161 F.3d 896, 903 (5th Cir. 1998). A constructive amendment does not occur when the indictment fully and accurately describes the defendant's conduct. *Id.* (citing *United States v. Mikolajczyk*, 137 F.3d 237, 243 (5th Cir. 1998)). And subsequent factual variances are immaterial if they do not modify an essential element of the charged offense. *See United States v. Petersen*, 383 F. App'x 458, 461 (5th Cir. 2010) (variance in caliber and serial number of the gun were not essential to charged offense of felon in possession of firearm, 18 U.S.C. § 922(g)(1)); *see, e.g.*, *United States v. Vaughan*, 2025 WL 1084658, at *5-6, *9 (E.D. Tex. Apr. 10, 2025) (finding no constructive amendment; indictment did not limit the charge to specific examples).

HGA's disavowal of victim status altered nothing in the indictment. The indictment alleged that Garza "did embezzle, steal, and obtain by fraud ... approximately $252,757.67, that was *under the care, custody, and control* of Houston Gateway Academy." Crim. Dkt. 1 at 7 (emphasis added). The italicized phrase tracks the language in 18 U.S.C. § 666(a)(1)(A). Garza admitted that the funds he took were in HGA's care, custody, and control because they came from HGA's operating account. *See* Crim. Dkt. 40 at 7; Crim. Dkt. 158 at 19. The subsequent determination that the State of Texas

provided those funds to HGA, and thus was entitled to restitution, did not change any element of the charged offense.

Further, ample evidence refutes Garza's contention that HGA "had not incurred any losses." *See* Civ. Dkt. 12 at 6; Crim. Dkt. 191 at 6. Notwithstanding HGA's claim that it suffered no "actual damage or economic loss," *see* Crim. Dkt. 95-3 at 2, an independent forensic audit reached the opposite conclusion, *see* Crim. Dkt. 109-1 at 14 (March 3, 2021 Weaver Report); Crim. Dkt. 110-1 at 2 (supplement).  The Weaver Report found that HGA had, either directly or indirectly, paid $191,292.30 to HotRod for which HGA received nothing in return.  *See* Crim. Dkt. 109-1 at 14.  The report also noted that HGA based its contrary view on a physical inventory of equipment, rather than a complete forensic accounting.  Crim. Dkt. 109-1 at 13; *see also* Dkt. 95-3 at 1-2.  Those findings show that HGA incurred losses, even if HGA was unwilling to acknowledge them.[1]

Ultimately, though, the victim's proper identity for restitution purposes has no impact on Garza's conviction under 18 U.S.C. § 666(a)(1)(A) for stealing

---

[1] Notably, an investigation requested by the Court uncovered that Garza had used his influence to persuade HGA's board of directors to claim that HGA was not a victim.  *See* Crim. Dkt. 95 at 4.  Various HGA representatives revealed that Garza had asked Charlie Menefee, President of HGA's Board, to write the February 20, 2020 letter to the Court asserting that HGA had received all the equipment for which it paid and had sustained no economic loss.  *See id.*; Crim. Dkt. 95-1 at 1 (Feb. 20, 2020 letter); Crim. Dkt. 88 at 26-27.  Garza's conduct gave ample reason to question the factual basis for HGA's denial.

funds that were in HGA's custody, care, or control.  Because the indictment was not constructively amended, Garza's counsel could not have been ineffective by failing to assert or advise Garza otherwise.

### G. Garza cannot show that counsel's filing of the motion to withdraw his guilty plea prejudiced him.

As another *Strickland* theory, Garza argues that his counsel filed a frivolous motion to withdraw Garza's guilty plea that led the Court to impose a higher sentence.  *See* Civ. Dkt. 12 at 9-10, 35-42; Crim. Dkt. 191 at 9-10, 35-42.  Among other things, the Government responds that Garza cannot show the motion to withdraw his plea was prejudicial.  *See* Civ. Dkt. 14 at 33-41; Crim. Dkt. 192 at 33-41.  The record supports the Government's position.

During the sentencing, the Court overruled Garza's objection to the PSIR's recommended denial of a three-level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility.  Crim. Dkt. 159 at 13 (April 9, 2021 sentencing).  The Court's explanation mentioned Garza's unsuccessful attempt to withdraw the guilty plea.  *See id.* at 29.  But the Court also based its ruling on an explicit finding that Garza had obstructed justice.  *See id.* at 27-28.  That finding stemmed from Garza's attempt to convince Bokaiyan to lie to the grand jury about Garza's transactions with HotRod.  Crim. Dkt. 79 ¶¶ 21, 33.  Based on "both grounds," the Court found that Garza was not entitled to acceptance-of-responsibility credit.  *See* Crim. Dkt. 159 at 29.

Nevertheless, Garza insists that this is an "extraordinary case[ ]" where, but for the motion to withdraw, this Court would have applied both the obstruction and acceptance adjustments.  *See* Civ. Dkt. 12 at 38-39; Crim. Dkt. 191 at 38-39; *see also*, *e.g.*, *United States v. Marin-Cardona*, 739 F. App'x 256, 258 (5th Cir. 2018) (unpublished) ("Conduct that results in an obstruction of justice enhancement under § 3C1.1 ... ordinarily 'indicates that the defendant has not accepted responsibility for his criminal conduct,' except in 'extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.'") (quoting U.S.S.G. § 3E1.1, cmt. n.4) (further quotation omitted). According to Garza, because his obstructive conduct occurred pre-indictment, it does not justify denying him acceptance-of-responsibility credit.  *See* Civ. Dkt. 12 at 39; Crim. Dkt. 191 at 39.

Garza's position was already considered and rejected by this Court.  At sentencing, the Court recognized that, in extraordinary cases, a defendant can obtain adjustments under both 3C1.1 and 3E1.1.  *See* Crim. Dkt. 159 at 27. But the Court found nothing "extraordinary … warranting acceptance of responsibility" credit in Garza's case.  *See id.*  The Court reasoned that Garza's attempt to suborn perjury was "arguably more serious" than other conduct deemed sufficient to deny acceptance of responsibility.  *See id.* at 28 (citing *United States v. Rodriguez*, 942 F.2d 899, 902-03 (5th Cir. 1991) (per curiam), which upheld the denial of acceptance-of-responsibility credit where the

defendant had obstructed justice by providing the probation office with a fraudulent birth certificate). That reasoning leaves no room to conclude that this Court would have granted Garza the credit even if he had not moved to withdraw his guilty plea.

And even assuming this Court's findings were not conclusive, the Fifth Circuit decision affirming them certainly is. On appeal, the Fifth Circuit upheld this Court's denial of acceptance-of-responsibility credit, emphasizing Garza's attempt to suborn perjury before a grand jury and agreeing there were no "extraordinary" circumstances entitling Garza to the credit. *Garza*, 2022 WL 2115999, at *2. That ruling is binding as law of the case. *See United States v. Rodriguez*, 821 F.3d 632, 634 (5th Cir. 2016) (holding § 2255 relief cannot be based on an issue that was decided during the prior appeal).

As a final contention, Garza speculates that, even setting aside the acceptance-of-responsibility credit, this Court "would have assessed less than 60 months" imprisonment had his attorney not filed the motion to withdraw the guilty plea. Civ. Dkt. 12 at 42; Crim. Dkt. 191, at 42. Nothing in the record supports Garza's position. Instead, the Court weighed both "the good things" Garza had done for HGA, which favored a sentence lower than the 63-month Guidelines maximum sentence, against Garza's leading a "double life" by stealing funds. *See* Crim. Dkt. 159 at 50-51.

In sum, the record confirms that Garza's unsuccessful motion to withdraw his guilty plea did not affect the sentence he received. This Court should reject his *Strickland* claims.

### H.    Neither a hearing nor a certificate of appealability is warranted.

Based on the foregoing conclusions, Garza is not entitled to relief under § 2255. An evidentiary hearing is therefore unnecessary. *See* 28 U.S.C. § 2255(b); *see also, e.g., Cervantes*, 132 F.3d at 1110. This Court should decline to hold one.

To obtain a certificate of appealability, Garza must make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to demonstrate "that reasonable jurists would find [this Court's] assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 276 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). No reasonable jurist would debate the conclusion that Garza's contentions fail to state a basis for relief under § 2255. This Court should deny a certificate of appealability *sua sponte*. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

## II.    Garza's motion to unseal documents

Before his 2255 motions were consolidated, Garza filed a motion to unseal 19 filings on the docket of this case. *See* Crim. Dkt. 186 (filed Oct. 16,

2023).  The filings at issue are Crim. Dkt. 14, 62, 88, 95, 96, 98, 101, 102, 103, 109, 110, 113, 115, 116, 118, 123, 124, 133, and 177.[2]  *See id.*  Garza's motion raised conclusory fraud allegations and argued that the Government has no legitimate interest in keeping the filings under seal.  *See id.*

Garza initially claimed he needed those filings to prepare a reply in support of § 2255 relief.  *See* Crim. Dkt. 194.  But his § 2255 motion did not include any fraud claims.  Garza also proceeded to file his reply even without the requested documents, Crim. Dkt. 198, which the Court accepted *nunc pro tunc*, Crim. Dkt. 201.

At the Court's request, Crim. Dkt. 201, the Government responded to Garza's motion to unseal, Crim. Dkt. 203.  The Government argued that Garza's motion should be denied or alternatively, denied in part and granted only to the extent it seeks to unseal documents filed by Garza himself.  *See* Crim. Dkt. 203 at 10.

### A. Garza has not overcome the Government's legitimate reasons for sealing certain sensitive records.

There is a "working presumption" that "judicial records should not be sealed."  *See Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021).  This presumption is not absolute.  Courts may order documents sealed

---

[2] Crim. Dkt. 88 is unsealed and unrestricted.  Garza's request to unseal it is moot. Crim. Dkt. 14, 113, 177 are restricted, not sealed. The Court construes Garza's request as seeking the removal of restrictions on these documents.

when the interest in maintaining their confidentiality outweighs the public's interest in accessing them. *See Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 622 F. Supp. 3d 495, 507 (S.D. Tex. 2022) (citing *Seals v. Herzing Inc.-New Orleans*, 482 F. App'x 893, 896 (5th Cir. 2012)), *aff'd*, 117 F.4th 628 (5th Cir. 2024); *see also, e.g.*, *United States v. Ahsani*, 76 F.4th 441, 450 (5th Cir. 2023) (examples of compelling interests for sealing judicial records).

In cases related to § 2255 proceedings, courts protect the Government's legitimate interest in maintaining certain confidential records under seal. Those records include sealed indictments, grand jury proceedings, and documents with a defendant's personal identifiers. *See, e.g.*, *United States v. Carvajal*, 989 F.2d 170, 170 (5th Cir. 1993) (per curiam) ("Grand jury proceedings are normally secret[.]"); *United States v. Kirkendoll*, 2025 WL 650327, at *7 (W.D. La. Feb. 26, 2025) (denying motion to unseal documents containing sensitive information). In addition, courts deny motions to unseal that fail to show why unsealing is warranted, such that the request amounts to a "'fishing expedition' for claims for relief." *See United States v. Hagan*, 730 F. App'x 269, 270 (5th Cir. 2018) (per curiam); *cf. Carvajal*, 989 F.2d at 170.

Here, the Government does not oppose unsealing Garza's own filings, Crim. Dkt. 96, 115, 118, and 124, except a page attached to one of them—Crim. Dkt. 96-2 at 12 (Exhibit 4)—that contains an HGA audit report and is included

in other filings that the Government argues should remain sealed.[3]  *See* Civ.

Dkt. 18 at 9; Crim. Dkt. 203 at 9.   Garza's filings include the motion to

withdraw his guilty plea (Crim. Dkt. 96), a supplement to that motion (Crim.

Dkt. 115), a supplemental memo for sentencing (Crim. Dkt. 118), and a

character letter from his sister (Crim. Dkt. 124).  As the Government neither

opposes unsealing those filings nor provides any justification for maintaining

them under seal, the Court will unseal all four except the exhibit with the audit

report listed above, Crim. Dkt. 96-2 at 12.

   As for the rest of the sealed filings, Garza argues that there is "no

legitimate governmental interest nor any compelling interest in keeping the

documents" he seeks sealed.  Crim. Dkt. 186 at 1; *see also* Crim. Dkt. 206 at 2,

5-8.  He further claims that the sealed documents show that "every proceeding

involved in" his prosecution "is suspect."   *See* Crim. Dkt. 206 at 8.  Garza is

mistaken on multiple fronts.

   First, the PSIR and related documents were properly sealed pursuant to

local rule.   *See* S.D. Tex. Crim. L.R. 32.4, 32.7.  Garza has not presented

anything that invalidates this Court's rule.  Accordingly, those records will not

be   unsealed.    *See*  Crim.  Dkt.  62  (Probation's  confidential  sentencing

---

[3] The page at Crim. Dkt. 96-2 at 12 is also found in Crim. Dkt. 109-2 at 64 and Crim.
Dkt. 98-2 at 1, addressed below.

recommendation); Crim. Dkt. 113 (Probation's confidential sentencing recommendation).

The Government has a legitimate interest in maintaining other filings under seal. As noted by the Government, documents related to restitution contain sensitive information that should not be made public. *See* Civ. Dkt. 18 at 8; Crim. Dkt. 203 at 8. The documents in dockets 109 and 110 contain forensic accounting reports of HGA's records. The reports, over 700 pages long, contain voluminous private financial data. *See* Crim. Dkt. 109, 110. In addition, Crim. Dkt. 98 includes an audit trail report on HGA funds, with sensitive financial information*, see* Crim. Dkt. 98-2 at 1.

Notably, too, Garza has provided no valid reason as to why he seeks unsealing of the disputed filings. Vague and unsubstantiated allegations of fraud by the Government and former counsel do not suffice. *See* Crim. Dkt. 186 at 1 (conclusorily alleging the Government and his former attorneys "lied and misled" and "committed fraud upon" the Court); Crim. Dkt. 206 at 2 (seeking documents to "investigat[e] government misconduct and fraud on the Court"). Garza's request is little more than a "fishing expedition" for additional claims or challenges for relief. *See Hagan*, 730 F. App'x at 270.

None of Garza's targeted filings relates to any claim in his § 2255 motion. *See e.g.*, Crim. Dkt. 62, 113 (probation documents); Crim. Dkt. 14, 103, 133, 177 (documents from this Court); Crim. Dkt. 102 (a proposed order); Crim. Dkt.

123 (HGA counsel letter).  Indeed, the Government correctly observes that Garza abandoned his fraud allegations when filing his amended § 2255 motion. *See* Civ. Dkt. 18 at 6; Crim. Dkt. 203 at 6; *cf. Carvajal*, 989 F.2d at 170 (dismissing an appeal as frivolous where the defendant failed to allege any irregularity in grand jury proceedings in either his § 2255 motion or his motion for grand jury transcripts).  Many of the documents Garza seeks pertain to restitution, *see* Crim. Dkt. 95, 98, 101, 102, 103, 109, 110, 123.  But Garza cannot challenge restitution in a § 2255 motion.  *See United States v. Hatten*, 167 F.3d 884, 887 & n.5 (5th Cir. 1999); *see also Campbell v. United States*, 330 F. App'x 482, 482-83 (5th Cir. 2009).

Further, Garza notes that he requested copies of documents from his trial counsel.  *See* Crim. Dkt. 186.  But Garza has not shown that counsel refused to provide these documents to him.  *See id.*  Garza merely *assumes* that counsel will not provide those documents because they will "prove" counsel "was wrong." *See* Crim. Dkt. 206 at 4.  That is pure speculation.  Nor has Garza shown that he tried to obtain the documents from his appellate attorney, Josh Schaffer.  *See United States v. Mauskar*, 2009 WL 10704340, at *2 n.2 (S.D. Tex. Nov. 11, 2009) (noting that presumably defendant could obtain copies of documents from his counsel).  Accordingly, Garza's motion to unseal is granted only with respect to his own filings and denied in all other respects.

## Recommendation & Order

For the foregoing reasons, it is **RECOMMENDED** that Defendant-Movant Richard Garza's Section 2255 motion (Civ. Dkt. 12; Crim Dkt. 191) be **DENIED**, that an evidentiary hearing be **DENIED**, and that a certificate of appealability be **DENIED**.

It is further **ORDERED** that Garza's motion to strike the Government's over-length opposition brief (Crim. Dkt. 197) is **DENIED**.

It is further **ORDERED** that Garza's motion to unseal documents (Crim. Dkt. 186) is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** Garza's motion to unseal Crim. Dkt. 96, 115, 118, and 124, except for Exhibit 4 attached to Crim. Dkt. 96 (i.e., Crim. Dkt. 96-2 at 12), which shall remain sealed. In all other respects, Garza's motion to unseal is **DENIED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** ***Ortiz v. City of San Antonio Fire Dep't***, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on June 17, 2025, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge